UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| Jordon H. Kaiser, ) | Case No. 11bk41555 |
| ) | |
| Debtor. ) | Chapter 7 |
| ) | |
| Deborah Kanner Ebner, not individually but as ) Trustee of the Bankruptcy Estate of Jordon H. ) Kaiser, ) | |
| ) | |
| Plaintiff, ) | Adversary Case No. 13ap01243 |
| ) | |
| v. ) | Judge Timothy A. Barnes |
| ) | |
| Doris Kaiser, individually and as Trustee of the ) Shellie Kaiser Trust, and as Trustee of the Amy ) Kaiser Wickersham Trust, and as Trustee of the ) Doris Kaiser Trust, *et al.*, ) | |
| ) | |
| Defendants. ) | |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

The matters before the court arise out of seven[1] motions to dismiss (the "Motions to Dismiss") filed by nine defendants, seeking dismissal of counts IV and V of the adversary complaint filed by Deborah Kanner Ebner (the "Trustee") in her capacity as representative of the bankruptcy estate of Jordon H. Kaiser (the "Debtor"), and an objection, filed by several of the same defendants, to a proof of claim against the Debtor's bankruptcy estate.[2] Counts IV and V of the adversary

---

[1]      Ten defendants filed eight motions to dismiss, which were set on similar briefing schedules. After briefing was concluded, and after the hearing held on October 22, 2014, the court entered orders dismissing defendant Walter Kaiser from all counts of the adversary complaint and ruling on the remaining defendants' requests to dismiss the adversary complaint on all issues but for the statute of limitations issue. The court continued the remaining motions to dismiss for oral argument and ruling on the arguments made with respect to the counts IV and V statute of limitations argument only.

[2]      This Memorandum Decision, though entered in the above-captioned adversary case, 13ap01243 (the "Adversary Case"), applies in both the Adversary Case and in the main bankruptcy case, 11bk41555 (the

complaint seek to avoid alleged actual and constructive fraudulent transfers under 11 U.S.C. §§ 544 and 548 and the Uniform Fraudulent Transfers Act (the "UFTA") as enacted in Illinois.

The Motions to Dismiss present arguments that the majority of the Trustee's actions are predicated on transfers that took place outside of the four-year statute of limitations provided for under the UFTA. The Trustee, in turn, argues that she may avoid transfers within the statute of limitations applicable to any creditor of the bankruptcy estate, including, but not limited to, the Internal Revenue Service (the "IRS"). In response, some of the moving defendants filed an objection to the underlying IRS claim.

For the reasons stated below, the motion to disallow the IRS's claim will be denied and the motions to dismiss will be granted in part and denied in part.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code, or arising in, or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code, or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). An objection to allowance of a claim against the bankruptcy estate may only arise in a bankruptcy case and, thus, is a core proceeding under 28 U.S.C. § 157(b)(2)(B) in which this court has constitutional authority to enter final orders. *In re C.P. Hall Co.*, 513 B.R. 540, 543 (Bankr. N.D. Ill. 2014) (Goldgar, J.). Proceedings to avoid fraudulent conveyances under sections 544 and 548 and applicable state law are core proceedings in which the bankruptcy court also has constitutional authority to enter final orders. 28 U.S.C. § 157(b)(2)(H); *KHI Liquidation Trust v. Wisenbaker Building Services, Inc. (In re Kimball Hill, Inc.)*, 480 B.R. 894, 907 (Bankr. N.D. Ill. 2012) (Barnes, J.).

Accordingly, final judgment is within the scope of the court's authority.

## PROCEDURAL HISTORY

A.  The Motion to Disallow

In considering the Motion to Disallow (as defined below) the IRS's claim, claim no. 7-1 filed on September 30, 2013 (the "IRS Claim"), the court has considered the arguments of the parties at

---

"Bankruptcy Case"). The court will concurrently enter an order with respect to the objection to claim allowance in the main bankruptcy case making this Memorandum Decision applicable therein.

the December 17, 2014 hearing (the "Hearing"), and has reviewed and considered the following documents in the Bankruptcy Case:

(1) Motion to Disallow Claim No. 7-1 of the Department of Treasury – IRS (the "Motion to Disallow") filed by defendants Shellie Kaiser ("Shellie"), Amy Kaiser Wickersham ("Amy") and John Wickersham ("John") (collectively, the "Objecting Defendants") [Dkt. No. 187];

(2) Trustee's Response [sic] Objection to IRS Claim [Dkt. No. 192], and;

(3) Shellie, Amy and John's Reply in Support of the IRS Claim Objection [Dkt. No. 193].

B. The Motions to Dismiss

In considering the Motions to Dismiss, the court has considered the arguments of the parties at the Hearing and has reviewed and considered the following filed documents in the Adversary Case:

(1) The Trustee's Complaint for Accounting, Turnover, and Invalidation of Transfers With Corrected Caption (the "Complaint") [Adv. Dkt. No. 31];[3]

(2) The Motions to Dismiss filed by nine individual defendants (collectively the "Moving Defendants"), as follows:

    a. Motion to Dismiss Plaintiff's Complaint filed by MB Financial Bank N.A. ("MB") [Adv. Dkt. No. 151];

    b. Motion to Dismiss Adversary Complaint filed by Metropolitan Life Insurance Company ("Metlife") [Adv. Dkt. No. 170] and Memorandum in support thereof [Adv. Dkt. No. 171];

    c. Motion to Dismiss filed jointly by Shellie, Amy and John [Adv. Dkt. No. 174];

    d. Motion to Dismiss Counts 4-6 of Plaintiff's Complaint filed by Transamerica Life Insurance Company ("Transamerica") [Adv. Dkt. No. 193];

    e. Motion to Dismiss Counts 4-6 of Plaintiff's Complaint filed by North American Company for Life and Health Insurance ("North American") [Adv. Dkt. No. 194];

    f. Motion to Dismiss Amended Complaint filed by Doris Kaiser ("Doris") [Adv. Dkt. No. 195]; and

    g. Motion to Dismiss Plaintiff's Complaint filed by American General Life Insurance Company ("American General") [Adv. Dkt. No. 196].

---

[3] Though incorrectly styled merely as a complaint, the Complaint referenced above and in the parties' filings is actually an amended complaint. *See* Adv. Dkt. Nos. 1 and 9 for earlier versions of the Complaint.

(3) The Trustee's Omnibus Response to the Motions to Dismiss Filed by the Moving Defendants [Adv. Dkt. No. 226]; and

(4) The replies filed by the Moving Defendants in support of their respective Motions to Dismiss, as follows:

    a. American General's Reply in Support of Its Motion to Dismiss Plaintiff's Complaint [Adv. Dkt. No. 259];

    b. MB's Reply in Support of Its Motion to Dismiss Plaintiff's Complaint [Adv. Dkt. No. 260];

    c. MetLife's Reply in Support of Its Motion to Dismiss the Adversary Complaint [Adv. Dkt. No. 261];

    d. Transamerica's Reply in Support of Its Motion to Dismiss Counts 4-6 of Plaintiff's Complaint [Adv. Dkt. No. 262];

    e. Doris's Reply in Support Motion to Dismiss Amended Complaint [Adv. Dkt. No. 264];

    f. North American's Reply in Support of Its Motion to Dismiss Counts 4-6 of Plaintiff's Complaint [Adv. Dkt. No. 265]; and

    g. Shellie, Amy and John's Reply in Support of Motion to Dismiss.

Though the foregoing items together do not constitute an exhaustive list of the filings in the Bankruptcy Case and the Adversary Case, the court has taken judicial notice of the contents of the dockets in these matters. *See Levine v. Egidi*, No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (authorizing a bankruptcy court to take judicial notice of its own docket).

## BACKGROUND[4]

Prior to the commencement of the Bankruptcy Case, the Debtor, a resident of Illinois, was a businessman who held interests in many corporations, including a majority interest in a group of health clubs. The Debtor accumulated real property in a number of different states and substantial amounts of personal property. At one property alone, the Debtor and his spouse had personal property insured for more than $500,000. The Debtor's spouse, Doris, was unemployed during their 6-year marriage.

In the early 2000s, it appears that the Debtor began to have financial troubles related to his interest in the health clubs.

---

[4] The background set forth herein is as stated the Complaint and is adopted for the purposed of resolving the Motions to Dismiss only. In accordance with Fed. R. Civ. P. 52(a)(3), such background does not constitute findings by the court. Findings of fact are reserved for summary judgment or trial, as appropriate.

Around that same time, it is alleged that the Debtor engaged in a series of transfers benefiting his relatives. The Trustee alleges that the Debtor obtained large life insurance policies with many of his relatives listed as the beneficiaries. The Trustee also alleges that, as early as 2003, the Debtor transferred his interests in real property to Doris for allegedly no consideration, and also transferred his interests in various companies and partnerships to trusts, with his relatives largely the beneficiaries of such conveyances.

On October 12, 2011, the Debtor filed a voluntary petition for bankruptcy relief under Chapter 7 of the Bankruptcy Code (the "Petition Date"). The Debtor's schedules listed fully exempt assets totaling $1,500 and liabilities totaling $18,570,778.80. The Debtor scheduled a current monthly income of $1,971 in the form of Social Security income and monthly expenses of $3,175. The Debtor also scheduled his interest in various trusts and companies, but provided that the value of all such interests was unknown.

On May 1, 2012, notice of the Debtor's death was filed. The Certification of Death Record indicates that the Debtor died on February 17, 2012.

On September 30, 2013, the IRS filed proof of claim 7-1 reflecting a $5,000 liability for failure to file a tax return for the year 2010.

On October 15, 2013, the Trustee filed the Complaint, naming as defendants relatives of the Debtor other than the Moving Defendants, nine trusts of which the Debtor's relatives are beneficiaries, four related companies, one related partnership and the Moving Defendants.[5] In the Complaint, the Trustee requests that the court (I) issue declaratory judgment against Amy and Shellie and in favor of the Trustee declaring that certain funds are property of the estate; (II) issue an order for turnover of property for the certain funds at issue in count I; (III) order one of the related companies to deliver accounting of its books and records; (IV) enter judgment against each defendant to whom the Debtor transferred property with the actual intent to hinder, delay, or defraud creditors; (V) enter judgment against each defendant to whom the debtor made a constructively fraudulent transfer; (VI) enter a judgment for unjust enrichment against each defendant whose retention of property would be unjust; and (VII) order MB to deliver an accounting of transactions with the Debtor.

Following the filing of the Motions to Dismiss, the court set each of the Motions to Dismiss on a similar briefing schedule. Despite that briefing schedule, on October 20, 2014, only two days prior to the date set for ruling on the Moving Defendants' Motions to Dismiss, the Objecting Defendants filed the Motion to Disallow and, despite the 30-day notice period required by Federal Rule of Bankruptcy Procedure 3007(a) and without leave of the court or notice to the IRS, noticed the Motion to Disallow for hearing on October 22, 2014 alongside the Motions to Dismiss.

As a result, when on October 22, 2014, the court ruled on each of the Motions to Dismiss, it was unable to rule on the statute of limitations arguments insofar as they relied on the determination of the IRS as a creditor of the bankruptcy estate. With respect to that argument, the Motions to

---

[5] Though some answers have been filed, many of the defendants, including the nine trusts, have not answered or otherwise pled with respect to the Complaint.

Dismiss were continued to December 17, 2014 to be heard alongside the Motion to Disallow, which was set for briefing after proper notice had been provided.

While the IRS did not respond to the Motion to Disallow it did, on November 14, 2014, amend its claim to reflect a present liability of $0.00.

At the Hearing on December 17, 2014, the court heard the arguments of the parties with respect to Motion to Disallow in the Bankruptcy Case and the remaining issues in the Motions to Dismiss. At that time, the court announced its ruling on the issues addressed herein. Though it is largely consistent with the remarks made at that time, this Memorandum Decision differs in its treatment of section 548. This Memorandum Decision therefore supersedes the court's earlier remarks.

## DISCUSSION

The matter before the court is has rarely presented itself in this Circuit. The Trustee in this matter has sought to step into the shoes of the IRS as the triggering creditor (the so-called, "golden creditor") under section 544 in response to the arguments raised in the various Motions to Dismiss that the Complaint, at least insofar as it seeks to avoid allegedly fraudulent transfers under section 544 beyond the four-year statute of limitations imposed by the Illinois UFTA, is time-barred.

If the IRS is the golden creditor and the IRS's statute of limitations applies to the Trustee, it would appear that the majority of the transfers pursued by the Trustee would not be time-barred. But the application of the rule in this case is predicated on both that ability and the status of the IRS – the golden creditor in question – as a prepetition creditor of the estate.

Thus in order to consider the Motions to Dismiss and the Trustee's argument, the court must first consider the status of the IRS's claim. It does so first in the context of the Motion to Disallow. After considering the same, the court turns to the Motions to Dismiss and the Trustee's argument.

A.  The Motion to Disallow the IRS Claim

The allowance of claims or interests in bankruptcy is governed by 11 U.S.C. § 502. Under section 502, "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If a claim is objected to, "the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount," unless one of the listed grounds for disallowance exists. 11 U.S.C. § 502(b).

A proof of claim filed in accordance with 11 U.S.C. § 501 constitutes *prima facie* evidence of the validity and the amount of the claim. Fed. R. Bankr. P. 3001(f). The party objecting to claim allowance carries the burden of rebutting the proof of claim. *In re Sentinel Mgmt. Group, Inc.*, 417 B.R. 542, 550 (Bankr. N.D. Ill. 2009) (Squires, J.); *In re J.S. II, L.L.C.*, 389 B.R. 563, 570 (Bankr. N.D. Ill. 2008) (Cox, J.); *In re Vastag*, 345 B.R. 882, 885 (Bankr. N.D. Ill. 2006) (Schmetterer, J.). To rebut the presumption of validity of a claim, an objection must be premised on the grounds for disallowance set forth in section 502(b). *Sentinel Mgmt. Group*, 417 B.R. at 550; *Vastag*, 345 B.R. at 885.

6

The Objecting Defendants first argue that the IRS Claim, as evidenced by a Proof of Claim filed by the IRS on September 30, 2013, is untimely. The Objecting Defendants state that the bar date applicable to the IRS in this matter was September 27, 2013, and that the IRS Claim should therefore be disallowed as it was three days late. The Objecting Defendants also argue that the IRS Claim, predicated on a failure of the Debtor to file his 2010 tax return, has been vitiated by the filing of that return by Doris on October 2, 2014, over one year after the IRS Claim was filed. The Objecting Defendants offered no statutory or case law in support of either contention, either in the Motion to Disallow or at the Hearing.

As noted above, a claim objection must be premised on the grounds for disallowance set forth in section 502(b), *Sentinel Mgmt. Group*, 417 B.R. at 550; *Vastag*, 345 B.R. at 885, and the Motion to Disallow states no such grounds. In fact, the Motion to Disallow misapprehends a fundamental aspect of claims allowance in chapter 7 cases.

Section 502(b) sets forth reasons for not allowing a claim, including the fact that the proof of claim was "not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a)." 11 U.S.C. § 502(b)(9). The express exception contained in section 726(a), however, is directly on point. Under section 726(a), untimely proofs of claim in chapter 7 cases are prioritized, not disallowed. *See* 11 U.S.C. § 726(a). For example, an unsecured claim filed by a creditor who had notice or knowledge of the bankruptcy but filed late will not be disallowed, but instead be afforded a lower priority and may nonetheless be entitled to distribution of remaining property of the estate. 11 U.S.C. § 726(a)(3). The untimeliness of filing of a proof of claim in a chapter 7 case is not, therefore, a basis for disallowance under section 502(b)(6).

That said, a second fundamental reason exists for denying the Motion to Disallow – the Objecting Defendants lack standing to bring it.

Section 502(a) provides that an objection may be filed by a "party in interest." 11 U.S.C. § 502(a). A "party in interest" is not defined in the Bankruptcy Code, but has been noted by the Seventh Circuit to be "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding." *In re FBN Food Servs., Inc.*, 82 F.3d 1387, 1391 (7th Cir. 1996). The relevant interest is a pecuniary one. *In re C.P. Hall Co.*, 513 B.R. 540, 543 (Bankr. N.D. Ill. 2014) (Goldgar, J.); *In re Olsen*, 123 B.R. 312, 313 (Bankr. N.D. Ill. 1991) (Ginsberg, J.).[6]

An objecting party will only have standing to the extent that it has a pecuniary interest in the estate. *See, e.g., Cult Awareness Network, Inc. v. Martino (In re Cult Awareness Network, Inc.)*, 151 F.3d 605, 607-08 (7th Cir. 1998) (discussing bankruptcy standing generally and noting that "[t]o have standing

---

[6] It is worth nothing that chapter 7 trustees have statutory standing to bring such objections. 11 U.S.C. § 704(a)(5). It was argued at the Hearing that adopting the golden creditor rule would incentivize chapter 7 trustees to ignore valid objections to IRS claims so that they may preserve their larger statute of limitations, if applicable. As noted below, such policy concerns are secondary to the plain language of the applicable statutes. Regardless, it is the court's view that the statutory duties imposed on chapter 7 trustees would require them to act appropriately. *See, e.g., id.; see also* S. Rep. No. 95-989, at 93 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5879 ("The trustee's principal duty is to collect and reduce to money the property of the estate for which he serves, and to close up the estate as expeditiously as is compatible with the best interests of parties in interest . . . If a purpose would be served (such as if there are assets that will be distributed), the trustee is required to examine proofs of claims and object to the allowance of any claim that is improper.").

7

to object to a bankruptcy order, a person must have a pecuniary interest in the outcome of the bankruptcy proceedings."); *C.P. Hall*, 513 B.R. at 543 ("A creditor's interest in a bankruptcy case is pecuniary, and so a creditor is a 'party in interest' with standing to object to the claims of other creditors."); *Olsen*, 123 B.R. at 313 ("It is well established in the Seventh Circuit and other circuits that an insolvent debtor is not a party in interest within the meaning of § 502(a) because the debtor has no pecuniary interest in the distribution of his/her assets among creditors.").

In this case, it appears to the court that the Objecting Defendants' only interest in disallowing the IRS's claim is to limit the Trustee's ability to pursue fraudulent transfer claims against them. Nothing further in this regard is offered by the Objecting Defendants.

Unlike the IRS as golden creditor, this is not an issue uncommon in this Circuit. In *FBN Food Services*, a defendant in a fraudulent conveyance action made essentially the same argument – that "its status as a defendant in the adversary proceedings made it a party in interest with standing to object to the [creditor's] claim." *In re FBN Food Servs.*, No. 93C6347, 1995 WL 230958, at *4 (N.D. Ill. Apr. 17, 1995). The district court disagreed and noted that the defendant was not a creditor and thus had no direct interest in the number or amount of claims filed against the bankruptcy estate. *Id.* at *5.

Other courts agree. In *Manshul Construction*, defendants in an adversary proceeding for the recovery of fraudulent conveyances sought to expunge claims that were the basis of the trustee's action against them. *In re Manshul Constr. Corp.*, 223 B.R. 428, 431 (Bankr. S.D.N.Y. 1998). In concluding that the defendants lacked standing to object to a claim, the court noted that the question of whether the challenged claims were properly relied on by a trustee in bringing an adversary was to be resolved in the adversary proceeding, and was not an issue to be raised by motion in the main bankruptcy case. *Id.* at 431.

In seeking to avoid liability by challenging the allowance of a triggering creditor's claims, such creditors are actually opposed to the interests of creditors of the estate generally. *See In re E.S. Bankest, L.C.*, 321 B.R. 590, 596-98 (Bankr. S.D. Fla. 2005). They are acting in their own, not the estate's best interests. *Id.*

The court therefore finds that the Objecting Defendants have failed to establish their standing to object to allowance of claims against the bankruptcy estate. Accordingly, the Motion to Disallow will be denied for lack of standing. The question of whether the Trustee may rely on the IRS Claim in bringing the Complaint will be resolved in the adversary proceeding, not in the main Bankruptcy Case.

B.  The Motions to Dismiss

The foregoing does not, however, conclude the court's inquiry – either with respect to the Motions to Dismiss as a whole or the narrower question of whether the IRS's status as a creditor in this matter is sufficient for it to act as a triggering creditor for statute of limitations purposes. The answer to the latter question is subsumed in an analysis of the former, which the court takes up now.

The Motions to Dismiss argue that the court should dismiss counts IV and V of the complaint under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for any transfers occurring outside of the two-year statute of limitations set forth in section 548 of the Bankruptcy

8

Code and the four-year statute of limitations set forth by the Illinois UFTA, as these are not claims upon which the court may grant relief. In response, the Trustee argues that the four-year statute of limitations is inapplicable as the IRS has filed a claim against the estate and is, thus, a creditor into whose shoes the Trustee may step for purposes of avoiding fraudulent transfers. If such were allowed, the Trustee argues that its UFTA claims would instead be subject to the longer statutes of limitations available to the IRS.

The court will consider each argument, in turn.

1. Statutes of Limitations and Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *Hallihan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). In assessing sufficiency, the complaint is viewed "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *Anchorbank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The standard for evaluating the sufficiency of the complaint "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* (citation omitted); *see also Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) ("A complaint suffices if any facts consistent with its allegations, and showing entitlement to prevail, could be established by affidavit or testimony at a trial."). In ruling on a motion to dismiss, "the Court takes as true all factual allegations in the plaintiff's complaint allegations complaint," *Killingsworth v. HSBC Bank Nevada*, 507 F.3d 614, 618 (7th Cir. 2007), as well as "information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745-46 n.1 (7th Cir. 2012); *Brisco v. United States (In re Brisco)*, 486 B.R. 422, 427 (Bankr. N.D. Ill. 2013) (Schmetterer, J.) ("A court may take judicial notice of matters of public record, including public court documents, without converting a Rule 12(b)(6) motion into a motion for summary judgment.") (*citing Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)).

A motion to dismiss under Rule 12(b)(6) on statute of limitations grounds calls into question the court's jurisdiction to hear the matter. Untimeliness of a claim under a statute of limitations, however, is an affirmative defense, *see* Fed. R. Civ. P. 8(c); *United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003), the presence of which will not usually justify dismissal for failure to state a claim. *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Complaints need not contain *any* information about defenses and may not be dismissed for that omission.").

Although untimeliness of a claim is an affirmative defense, as the court's jurisdiction is questioned, further inquiry at the motion to dismiss stage is required.

Dismissal on statute of limitations grounds "is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674-75 (7th Cir. 2009); *see also Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) ("[A complaint] does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense . . . [but] dismissal under Rule 12(b)(6) on the basis of a limitations defense may be appropriate when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense."). Thus, "[w]hile complaints typically do not address affirmative defenses, the statute of limitations may be raised in a motion to

dismiss if the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009).

The Trustee asserts as counts IV and V of the Complaint claims for avoidance of actual and constructive fraudulent transfers, respectively. The Complaint targets as fraudulent a number of transfers alleged to have occurred before the Petition Date, October 12, 2011, including some earlier than October 12, 2007, four years prior to the Petition Date. In so doing, the Complaint relies on sections 544 and 548 of the Bankruptcy Code and the Illinois UFTA, each of which has its own statute of limitations.

      a.    Statute of Limitations Under Section 548

The statute of limitations under section 548 of the Bankruptcy Code is relatively easy to determine. As the Complaint itself states,

> Section 548 of the Bankruptcy Code provides that "[t]he trustee may avoid any transfer ... of an interest of the debtor in property ... that was made ... on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily ... made such transfer ... with actual intent to hinder, delay or defraud any entity to which the debtor was or became, on or after the date that such transfer was made ... indebted." 11 U.S.C. § 548(a)(1)(B).

(Complaint, 23).

Thus, with respect to the Trustee's cause of action under section 548, the Complaint is untimely as to those transfers that occurred on or prior to October 12, 2009. As to such transfers, the Trustee has pled herself "out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Found.*, 559 F.3d at 674-75.

      b.    Statute of Limitations Under Section 544(b) and the Illinois UFTA

The Trustee's rights under section 544(b)(1) of the Bankruptcy Code depend on the rights of an actual unsecured creditor under applicable law. Under section 544(b)(1), "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 . . . ." 11 U.S.C. § 544(b)(1).

This section is derivative and "enables a trustee to do in a bankruptcy proceeding what a creditor would have been able to do outside of bankruptcy—except the trustee will recover the property for the benefit of the estate." *In re Equip. Acquisition Res., Inc.*, 742 F.3d 743, 746 (7th Cir. 2014). As a result, "if any unsecured creditor could reach an asset of the debtor outside bankruptcy, the Trustee can use § 544(b) to obtain that asset for the estate." *In re Leonard*, 125 F.3d 543, 544 (7th Cir. 1997).

The Trustee's powers under section 544(b) are conditioned on there being "an unsecured creditor of the debtor that actually has the requisite nonbankruptcy cause of action." *Equip. Acquisition Res.*, 742 F.3d at 746 (*quoting Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237, 243 (3d Cir. 2000)). A trustee stands in the shoes of an actual unsecured creditor and becomes subject to the same rights and limitations that the actual unsecured

creditor would be subject to outside of bankruptcy. *See id.* at 751 (holding that certain transfers made to the IRS by the debtor were not avoidable by the trustee under section 544(b) and the Illinois UFTA because an unsecured creditor's cause of action outside of bankruptcy would be barred by sovereign immunity). Accordingly, "if the actual creditor could not succeed for any reason—whether due to the statute of limitations, estoppel, res judicata, waiver, or any other defense—then the trustee is similarly barred and cannot avoid the transfer." *Id.* at 746.

An avoidance action under section 544(b) is timely if the unsecured creditor's claim was timely under the applicable nonbankruptcy law at the time the bankruptcy petition was filed, and the trustee brings the action within the time specified in section 546(a).[7] 11 U.S.C. § 546(a); *Boyer v. Crown Stock Distrib.*, 587 F.3d 787, 791 (7th Cir. 2009); *see also Steege v. Lyons (In re Lyons)*, 130 B.R. 272, 278 (Bankr. N.D. Ill. 1991) (Squires, J.) ("If the applicable nonbankruptcy limitations period has run at the time the bankruptcy petition is filed, the trustee is estopped from pursuing the action under that statute. . . . If the creditor into whose shoes the trustee seeks to step . . . still had time to pursue the remedy at the time of the petition, the trustee must bring the action within the time fixed by section 546.") (*citing* R. GINSBERG, BANKRUPTCY: TEXT, STATUTES, RULES § 9.07[b] (2d ed. 1990)).

No one disputes that the Adversary Case was filed within the period set forth in section 546(a). The only issue, therefore, is whether the Adversary Case was timely under the nonbankruptcy law made applicable by section 544(b).

The parties agree that that the Illinois UFTA qualifies as "applicable law" for purposes of section 544(b)(1). *See also Equip. Acquisition Res.*, 742 F.3d at 746 ("Usually, the 'applicable law' is a state's fraudulent-transfer statute."). A cause of action under the Illinois UFTA is generally time-barred unless brought "within 4 years after the transfer was made or the obligation was incurred." 740 ILCS 160/10(a) & (b).

Though the Trustee did not set forth the Illinois UFTA statute of limitations in the Complaint, the applicable statute is one with which the court is intimately familiar and is subject to judicial notice. *See, e.g., Indiana Nat'l Bank of Indianapolis v. Goss*, 208 F.2d 619, 622 (7th Cir. 1953) (court may take judicial notice of the law of the underlying state "without necessity of pleading or proof of the applicable law and statutes"). Taken as a whole, therefore, the contents of the Complaint combined with the matters on which the court may take judicial notice cause the court to conclude that, with respect to the Trustee's cause of action under section 544 and the Illinois UFTA, without something more, the Complaint is untimely as to those transfers that occurred prior to October 12, 2007. As to such transfers, the Trustee has pled herself "out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Found.*, 559 F.3d at 674-75.

Absent something further, therefore, dismissal on the basis that claims are time-barred is proper at this juncture. That something further, however, comes by way of the statutes of limitations applicable to the IRS as the so-called golden creditor.

---

[7] Section 546(a) provides in relevant part that "[a]n action or proceeding under section 544 . . . of this title may not be commenced after the . . . the later of--(A) 2 years after the entry of the order for relief; or (B) 1 year after the appointment or election of the first trustee . . . ." 11 U.S.C. § 546(a).

11

2.      The IRS as Golden Creditor

As discussed above, section 544(b)(1) grants the Trustee the right to step into the shoes of an actual unsecured creditor. As such, the Trustee is subject to the defenses that would be applicable against the relevant creditor, including a statute of limitations defense.

Here the Trustee seeks to step into the shoes of the IRS. As before, it is helpful to understand what that means with respect the statute of limitations applicable to the IRS.

a.      Statute of Limitations Applicable to the IRS

The IRS may collect tax liability from a transferee of property of the taxpayer. *See* 26 U.S.C. § 6901(a)(1)(A) (authorizing collection of "[t]he liability, at law or in equity, of a transferee of property . . . of a taxpayer."). Section 6901 of the Internal Revenue Code, 26 U.S.C. §§ 1001 *et seq.*, "merely establishes a procedure for tax collection but does not establish transferee liability." *Berliant v. Comm'r*, 729 F.2d 496, 499 (7th Cir. 1984); *see also Frank Sawyer Trust of May 1992 v. Comm'r*, 712 F.3d 597, 602-603 (1st Cir. 2013) ("[T]he federal statute authorizing the collection of taxes from transferees, 26 U.S.C. § 6901(a)(1), provides only a procedural remedy against an alleged transferee; substantive state law controls whether a transferee is liable for a transferor's tax liabilities."); *Diebold Found., Inc. v. Comm'r*, 736 F.3d 172, 184 (2d Cir. 2013) (same) (*citing Comm'r v. Stern*, 357 U.S. 39, 42 (1958)).

The IRS's ability to collect tax liability against a transferee of the taxpayer is dependent upon the IRS's ability to establish liability under state fraudulent-transfers law. *See Diebold Found.*, 736 F.3d at 184 (liability under the New York UFTA); *Frank Sawyer Trust of May 1992*, 712 F.3d at 603 (1st Cir. 2013) (liability under the Massachusetts UFTA); *Bresson v. Comm'r*, 213 F.3d 1173, 1173-1174 (9th Cir. 2000) (liability under the California UFTA). When proceeding under a state's fraudulent-transfers law, the IRS's substantive rights are those of a creditor under state law and in no way enhanced by operation of section 6901. *Diebold Found.*, 736 F.3d at 185 (*citing Stern*, 357 U.S. at 42).

However, in pursuing collection by way of transferee liability, the IRS is subject to the limitations periods set out in the Internal Revenue Code, not the statute of limitations set forth in the state fraudulent-transfers law. *See Bresson*, 213 F.3d at 1179; *United States v. Spence*, Nos. 99-2325, 99-2345, 2000 WL 1715216, at *4 (10th Cir. Nov. 15, 2000); *United States v. Fernon*, 640 F.2d 609, 612 (5th Cir. 1981).

The process by which the IRS may collect taxes against the transferee of property of the taxpayer is first assessment of tax liability, then collection, both of which are subject to well-specified limitations.

The Moving Defendants made much of the fact that the IRS's statute of limitations is unlimited, but that is not the case. In general, the IRS is subject to a ten-year statute of limitations for collection, measured from the time of assessment. 26 U.S.C. § 6502(a)(1).[8] Assessment of

---

[8]    Section 6502 provides that,

Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding

12

liability is, in turn, subject to varying time limitations. *See, e.g.*, 26 U.S.C §§ 6501(a) (as to taxpayer, three years from the date of filing of a tax return) & 6501 (as to transferee, one year after assessment to taxpayer/transferor).[9]

Therefore, the IRS generally has three years from the filing of a tax return to assess tax liability against a taxpayer and one year thereafter to assess tax liability against a transferee. Thereafter the IRS has ten years to collect.[10]

As noted, the trigger of all of these statutes of limitations is the filing of the tax return. If no tax return is filed, assessment of tax liability against the taxpayer can be made at any time. All parties agree that, as of the Petition Date and as indicated in the IRS Claim, the Debtor and Doris had not filed a tax return for 2010. Therefore, as indicated in the IRS Claim, the IRS, as of the Petition Date, had the right to assess tax liability against the Debtor, Doris and any transferee that received property of them, at any time. 26 U.S.C. §§ 6501(c)(1), (3).

### b. Section 544 and Stepping Into the Shoes of the IRS

In addition to the duration of the IRS's statute of limitations, the Moving Defendants have expressed concerns regarding the scope of section 544 when combined with the IRS Claim. In particular, the Moving Defendants have noted policy concerns, including both that this would make the "normal" statute of limitations meaningless as every case potentially involves IRS claims, and because, in cases such as this, there may exist a disproportionate ratio between the small amounts owed to the IRS and the potentially large amounts sought to be recovered for creditors. Also, as noted and rejected above, the Moving Defendants argue that having such a large, potential right conditioned on the allowance of a claim will incentivize trustees to overlook and thus not to object to issues with IRS claims.

Such policy concerns fly in the face of the plain language of section 544. Section 544 states that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 . . . ." 11 U.S.C. § 544(b)(1). Within section 544, there are no conditions on which unsecured creditor a trustee may choose as the golden creditor. In fact the law is clear that by choosing poorly, the trustee will be subject to the defenses that such creditor would also be subject to. *Equip. Acquisition Res.*, 742 F.3d at 751.

---

in court, but only if the levy is made or the proceeding begun . . . within 10 years after the assessment of the tax . . . .

26 U.S.C § 6502(a)(1).

[9] In the case of liability of a transferee of a transferee, assessment must be made "within 1 year after the expiration of the period of limitation for assessment against the preceding transferee, but not more than 3 years after the expiration of the period of limitation for assessment against the initial transferor." 26 U.S.C. § 6901(c)(2).

[10] Exceptions apply in the case of a fraudulent return or of failure to file a return, which do create a potential for open-ended liability. In such cases, that Internal Revenue Code provides that where "the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, *at any time*." 26 U.S.C. §§ 6501(c)(1), (3) (emphasis added).

13

Why then, would the trustee be forced to do anything other than choose the optimal creditor for such purposes? To hold otherwise would be to set policy contrary to law; to force the trustee to do something other than what the plain language of the statute provides.

As this court has previously stated:

> The Supreme Court has stated that "[t]he task of resolving [a] dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989); *In re Randle*, 358 B.R. 360, 362 (Bankr. N.D. Ill. 2006) (Doyle, J.), *aff'd*, No. 07C631, 2007 WL 2668727 (N.D. Ill. July 20, 2007). Where the language of the statute is unambiguous, no further inquiry is necessary or appropriate. *Sebelius v. Cloer*, 659 U.S. ___, ___, 133 S.Ct. 1886, 1895 (2013); *In re Vecera*, 430 B.R. 840, 842 (Bankr. S.D. Ind. 2010) (*citing Griffin v. Oceanic, Inc.*, 458 U.S. 564, 570 (1982)). Absent contrary definitions within the statute itself, words in a statute are presumed to have their "ordinary, contemporary, common meaning." *Pioneer Inv. Servs. v. Brunswick Assocs.*, 507 U.S. 380, 388 (1993) (*citing Perrin v. United States*, 444 U.S. 37, 42 (1979)).

*In re Walker*, 502 B.R. 324, 327 (Bankr. N.D. Ill. 2013) (Barnes, J.).

The language of section 544 is clear and without limitation other than that expressly set forth therein. The court therefore declines to place policy concerns above the plain language of the statute.

Even if the court were otherwise inclined, however, the policy concerns raised by the Moving Defendants are unavailing. The slippery slope the Moving Defendants point to is a logical fallacy that actual experience has disproven. The language of section 544 has, so long as it has read in its current form, allowed for the result permitted herein. Yet the cases addressing this are few and far between. *See, e.g., Finkel v. Polichuk (In re Polichuk)*, No. 10-003ELD, 2010 WL 4878789, at *3 (Bankr. E.D. Pa. Nov. 23, 2010); *Alberts v. HCA Inc. (In re Greater Se. Cmty. Hosp. Corp. I)*, 365 B.R. 293, 299-306 (Bankr. D.D.C. 2006); *Shearer v. Tepsic (In re Emergency Monitoring Technologies, Inc.)*, 347 B.R. 17, 19 (Bankr. W.D. Pa. 2006); *Osherow v. Porras (In re Porras)*, 312 B.R. 81, 97 (Bankr. W.D. Tex. 2004); *see also Tronox v. Kerr McGee Corporation (In re Tronox Inc.)*, 503 B.R. 239, 274-275 (Bankr. S.D.N.Y. 2013) (permitting the trustee to invoke the IRS's Federal Debt Collection Practices Act statute of limitations, and collecting cases allowing the same).

Within this Circuit, the court could find only one other instance where the matter has presented itself. *See Levey v. Gillman (In re Republic Windows & Doors, LLC)*, No. 08-34113, 2011 WL 5975256, at *9-12 (Bankr. N.D. Ill. Oct. 17, 2011) (Cox, J.). When Judge Cox addressed this question in 2011, her reasoning clearly allowed for what the trustee seeks herein. *Id.* at *10 ("[U]ntil the IRS files a claim and [has] it become allowable as required by section 544(b), the Trustee cannot rely on the IRS's ten-year limitations period."). Yet, again, the court is unaware of a flood of cases seeking the result sought here by the Trustee.

Further, the derivative nature of section 544 has always encompassed concerns such as the disparity of the claim and the recovery. In fact, such concerns predate the current Bankruptcy Code. In 1931, the Supreme Court considered whether a trustee's right of avoidance under the Bankruptcy Act, the precursor to section 544 of the Bankruptcy Code, was limited to the recovery for the

purposes of compensating those defrauded or whether larger recovery, for the benefit of the entire bankruptcy estate, was warranted. *Moore v. Bay*, 284 U.S. 4, 4-5 (1931). In delivering the opinion of the Court, Justice Holmes stated that "[t]he rights of the trustee ... are to be enforced for the benefit of the estate." *Id.* at 4.; *see also Decker v. Tramiel (In re JTS Corp.)*, 617 F.3d 1102, 1111-13 (9th Cir. 2010). In *JTS Corp.*, the Ninth Circuit clarified that "the right of the trustee to recover is ... not dependent at all on the size of the creditor's claim against the debtor" and "an entire transfer can be set aside even though the creditor's claim is nominal." *Id.* at 1112 (citations omitted).

The Seventh Circuit has also addressed this concern, and has concluded that even if the trustee "cannot point to creditors whose claims total more than the value of the [transfer], the Trustee can avoid the transaction entirely. The whole value of the asset then is distributed among creditors of the estate." *Leonard*, 125 F.3d at 544-45 (referring to this as an "entrenched rule"). It is therefore this court's conclusion that the objections regarding the disparity of the IRS Claim and the transfers sought to be recovered must fail.

   c.   Additional Concerns

The court would be remiss if it did not point out that not all courts have adopted the position that having the IRS as the golden creditor under section 544 will result in a change to otherwise applicable statutes of limitation.

In one instance, the Fifth Circuit declined to permit a trustee to stand in the IRS's shoes with respect to rights under the Federal Debt Collection Practices Act (the "FDCPA"). *MC Asset Recovery LLC v. Commerzbank A.G. (In re Mirant Corp.)*, 675 F.3d 530, 535 (5th Cir. 2012) (concluding that the trustee could not rely on the FDCPA because "treating the FDCPA as applicable law under 544(b) would impermissibly modify the operation of Title 11."). While the court disagrees with the *Mirant* reasoning,[11] that reasoning, in part, is founded on the working of the FDCPA and is therefore inapplicable here.

Another court has analyzed at length the issue, and concluded that it "[did] not believe that Congress, by enacting Section 544(b), intended to vest sovereign powers in a bankruptcy trustee and thereby immunize her from the strictures of state law in the pursuit of her private interests." *Wagner v. Ultima Homes, Inc. (In re Vaughan Co., Realtors)*, 498 B.R. 297, 305-306 (Bankr. D.N.M. 2013). The *Vaughn* court went to great lengths to analyze the sovereign powers of the government and how the pursuit of public rights or interests renders state statutes of limitation inapplicable. *Id.* at 304 (*citing*

---

[11] That a different result occurs when the IRS's rights under the FDCPA are invoked under section 544 is not a "modification to the operation of Title 11," *id.*, in the same way that altering variables in a formula is not a modification of the formula itself. The formula operates as it always does, yet with different results. Section 544 is simply an enabling formula. What variables are input into section 544 will always change the result, but that is not a modification of either section 544's operation or of the operation of Title 11 as a whole. Judge Gropper in the Southern District of New York has the better take on this question:

> These decisions fail to give sufficient weight to the language and purpose of § 544(b) of the Bankruptcy Code. The Oklahoma UFTA is also a remedy for the 'exclusive use' of creditors who can sue under that statute. It is incorporated in Federal law because of the operation of § 544(b), not because of anything contained in its own text, and there is no reason to treat the FDCPA any differently.

*Tronox*, 503 B.R. at 274.

*Marshall v. Intermountain Elec. Co., Inc.*, 614 F.2d 260, 263 n.3 (10th Cir. 1980); *S.E.C. v. Calvo*, 378 F.3d 1211, 1218 (11th Cir. 2004)).

In this court's view, that analysis – though undoubtedly correct in most instances – is simply misplaced here. The view that the statute of limitations available to the IRS may not be invoked by a bankruptcy trustee has no basis in the plain language of section 544(b). It is well established that suits by the Trustee under section 544(b) are derivative; the Trustee steps into the shoes of a creditor and enforces the rights of that creditor for the benefit of the bankruptcy estate. So while "[t]he unsecured creditor's ability to trump the applicable state statute of limitations might derive from its sovereign immunity, … the estate representative's ability to override that same limitation derives from § 544(b)." *Greater Se. Cmty. Hosp.*, 365 B.R. at 304. Accordingly, "[t]he focus of the court in determining who is acting in a 'governmental capacity' is the unsecured creditor, not the estate representative." *Id.*

In the second instance, the *Vaughan* analysis is based, in part, on policy considerations. This court is, however, not a court of policy. When the law is clear, the court need not look to the underlying policy. *United States v. Ron Pair Enters.*, 489 U.S. 235, 240-41 (1989) ("[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute."); *Equip. Acquisition Res.*, 742 F.3d at 747 ("We cannot credit arguments about congressional intent when they run counter to a provision's unambiguous text . . . . § 544(b) is unambiguous: the trustee may only recover transfers that are 'voidable under applicable law by a creditor holding an unsecured claim.'").

The plain language of section 544(b) does simply not support the view permitting a trustee to claim a larger statute of limitations by stepping into the shoes of the IRS as an unsecured creditor would somehow override Congressional intent by superseding state law. Section 544(b) refers to "applicable law" and does not limit applicable law to state fraudulent-transfers law, even if the applicable law that would permit an unsecured creditor to avoid a transaction is usually the state's fraudulent-transfer law. *See* 11 U.S.C. § 544(b); *see also Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."). As previously noted, just as the Trustee is subject to defenses that would be effective against the actual unsecured creditor on whose claim she relies, *see Equip. Acquisition Res.*, 742 F.3d at 751 (concluding that the trustee could not avoid transfers under section 544(b) because actual creditors would be barred by sovereign immunity when pursuing a similar action under applicable law), the Trustee may recover on claims that would be available to each actual unsecured creditor as of the filing of the bankruptcy petition. *See Leonard*, 125 F.3d at 544 ("[I]f any unsecured creditor could reach an asset of the debtor outside bankruptcy, the Trustee can use § 544(b) to obtain that asset for the estate.").

The court is not convinced that "a creditor holding an unsecured claim" should be read to exclude the IRS, and that in so choosing the IRS, that a trustee should not be subject to the benefits as well as the burdens of that choice. There is, based on the plain language of the statute, no reason to force the Trustee to choose anything other than the best rights available to her.

    3.    The Status of the IRS's Claim

As previously discussed, though the court has denied the Motion to Disallow, that does not end the court's inquiry regarding the IRS Claim. In order for the IRS to be the golden creditor in

this case, it must hold "an unsecured claim that is allowable under section 502." 11 U.S.C. § 544(b)(1).

When faced with similar questions in *Republic Windows & Doors*, Judge Cox wrote that "until the IRS files a claim and [has] it become allowable as required by section 544(b), the Trustee cannot rely on the IRS's ten-year limitations period." *Republic Windows & Doors*, 2011 WL 5975256, at *10. Judge Cox noted that in order for a claim to be allowable under section 502, a proof of claim must be filed. *Id.* at *9. She is, of course, correct. That is fact, other than the absence of an objection, the only condition contained in section 502(a).

As noted above, for the purposes of evaluating the sufficiency of a complaint under Rule 12(b)(6), the court "takes as true all factual allegations in the plaintiff's complaint allegations complaint," *Killingsworth*, 507 F.3d at 618, as well as "information that is subject to proper judicial notice." *Geinosky*, 675 F.3d at 745-46 n.1.

Here, the Trustee alleged in the Complaint that the IRS had filed a claim, stating that "the Internal Revenue Service is a creditor of the Debtor by virtue of having filed a proof of claim against the Debtor's bankruptcy estate for prepetition taxes." (Complaint, 20). The Moving Defendants did object, but that objection has been rejected herein. So the IRS Claim is an allowable claim, and section 544(b) is satisfied. For the purposes of resolving the Motions to Dismiss, this is all (and perhaps more) than is necessary.

This does not, however, necessarily resolve the Moving Defendants' affirmative defense. At the Hearing, the Moving Defendants argued that the IRS no longer holds an allowable claim because the Debtor's widow, Doris, had recently satisfied the claim. Doris filed the 2010 tax return—the source of the IRS's $5,000 claim—on or about October 2, 2014, well after the Petition Date and the filing of the IRS claim. Subsequently, the IRS amended its Proof of Claim to reflect a liability of $0.00, a fact of which the court may take judicial notice. *Brisco*, 486 B.R. at 427. This creates a potential issue with accepting the Complaint alone as determinative.

The court notes, however, that later satisfaction of a claim will not defeat a trustee's right to use a creditor as the golden creditor. *See Stalnaker v. DLC, Ltd. (In re DLC, Ltd.)*, 295 B.R. 593, 605 (B.A.P. 8th Cir. 2003), *aff'd sub nom. Stalnaker v. DLC, Ltd.*, 376 F.3d 819 (8th Cir. 2004) ("It is inconsistent with the Bankruptcy Code to allow a transferee of a fraudulent transfer to defeat the bankruptcy trustee by paying a couple of creditors. The potential for abuse is obvious."); *Acequia v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 807 (9th Cir. 1994) (rejecting the adversary defendant's argument that payment of all creditor claims under the plan mooted a section 544(b) action); *Mirant Corp.*, 675 F.3d at 534 (agreeing with the Eighth and Ninth Circuits and concluding that post-petition settlement of claims did not affect the trustee's standing under section 544(b)).[12] The IRS

---

[12] As a general rule, the rights of creditors are fixed as of the filing of the bankruptcy petition. *See, e.g.*, 11 U.S.C. §§ 108 (extending the time to commence an action if the applicable non-bankruptcy limitations period had not expired as of the commencement of the case), 362 (imposing an automatic stay on all acts to enforce rights against the debtor or property of the estate), 502(b) (noting that the amount of an allowable claim is determined as of the date of filing of the petition) and 546 (limiting the time to commence an avoidance action after the commencement of a bankruptcy case).

Claim, as it existed when the Adversary Case was commenced, is, therefore, sufficient to support the Trustee's pleading.

A question exists, nonetheless, in light of the foregoing, as how the subsequent amendment, if at all, affects the Trustee's ability to rely on the IRS Claim, and whether the IRS Claim is otherwise sufficient for the purposes of satisfying section 544. But these questions turn on issues of fact, and are not appropriately braced at this stage. For purposes of a motion to dismiss, the court accepts what the Trustee has pled.

The court cannot conclude therefore that claims in counts IV and V of the Complaint for avoidance of transfers taking place more than four years before the commencement of this case are conclusively time-barred so as to justify dismissal on a Rule 12(b)(6) motion. The Complaint alleges a plausible claim for avoidance under the Illinois UFTA, with respect to the Illinois UFTA, and the Motions to Dismiss on timeliness grounds must be denied.

## CONCLUSION

For the foregoing reasons, the Motion to Disallow must be denied. The Motions to Dismiss, with respect to the requests to dismiss counts IV and V of the Complaint as time-barred, will be granted with respect to causes of action under 11 U.S.C. § 548 for transfers occurring on or before October 12, 2009, but otherwise will be denied. Separate orders will be entered concurrently herewith.

Dated: December 31, 2014

_____
Timothy A. Barnes
United States Bankruptcy Judge